IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CRAIG S. PLAYER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-3947-N |
| | § | |
| DALLAS COUNTY, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

This Order addresses Defendant Dallas County's ("Dallas") motion for summary judgment [Doc.17]. For the following reasons, the Court grants the motion in part and denies it in part.

### I. THE EMPLOYMENT DISPUTE

Plaintiff Craig S. Player was formerly a deputy constable in Precinct 1 of the Dallas County Constable's Office. There, Player worked under Constable Derick Evans. According to Player's complaint, Evans required the deputy constables to campaign for his reelection while in uniform, donate to his campaign, work overtime at campaign-related events without compensation, and participate in Evans's kick-back scheme with a towing company. Player alleges that he worked at several of these events without appropriate compensation, though he did not include the additional hours on his time sheet.

In 2008 and 2009, several deputy constables (though not Player) complained about Evans's behavior, which led to an investigation of Precinct 1. As part of the investigation,

Dallas audited Precinct 1's records and found that several of the deputy constables' written logs of their attempts to serve eviction notices did not match the locations indicated by the patrol cars' GPS systems. Based on these findings, Dallas terminated several constables, including Player. Player received a "general discharge."

Player appealed his termination. Because deputy constables are not part of Dallas's civil service system, however, Player was denied a civil service hearing.[1] Player then appealed the "general discharge" designation[2] on his Texas Commission on Law Enforcement Officer Standards and Evaluation Report of Separation of Licensee (the "F-5 Report"). An administrative law judge with the Commissioner's Court later reviewed Player's F-5 Report and found that Dallas had not met its burden to support a general discharge. Specifically, the administrative judge found that Dallas had not shown that the GPS systems were reliable. The judge therefore changed Player's discharge from a general to an honorable discharge.

On October 1, 2012, Player sued Dallas for violating his procedural due process rights under the Fourteenth Amendment of the Constitution, the Fair Labor Standards Act (the "FLSA"), and section 617.005 of the Texas Government Code. Player later amended his complaint to include a claim for violation of his substantive due process rights. Player argues

---

[1] For a discussion of Dallas's history with deputy constables and the civil service system, see *Garcia v. Dallas County*, No. 10-CV-2521, slip op. at 5–16 (N.D. Tex. July 23, 2012) (Godbey, J.).

[2] A "general discharge" indicates a discharge related to a disciplinary investigation or poor work performance. *See* 2d Am. Compl. 6–7, n. 3 [27].

ORDER – PAGE 2

that Dallas did not provide him with due process by refusing to hear his appeal of his termination and that Dallas owes him overtime pay for the events worked for Evans. Player seeks monetary damages as well as injunctive relief. Dallas now moves for summary judgment.

## II. STANDARD FOR SUMMARY JUDGMENT

A trial court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, a court must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "conclusory allegations, speculation, and unsubstantiated assertions" will not satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Indeed, factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. DALLAS IS ENTITLED TO SUMMARY JUDGMENT ON PLAYER'S DUE PROCESS AND TEXAS LAW CLAIMS

#### A. Player Has No Protected Interest in Continued Employment with Dallas

Player alleges that Dallas deprived him of his rights to both substantive and procedural due process by unfairly terminating him without affording him a civil service hearing.[3] To succeed on either of his due process claims, Player must first show that he has a protected property interest in continued employment with Dallas. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). Substantive due process "bars certain arbitrary,

---

[3]Player's cause of action against Dallas arises under 42 U.S.C. § 1983. The parties do not dispute whether Dallas, as a municipality, may be held liable in this case. For the purposes of this analysis, the Court assumes the existence of municipal liability.

wrongful government actions" that deprive an individual of a protected life, liberty, or property interest "'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). In the context of public employment, a plaintiff must show that he had a protected property interest in his employment and that the denial of the property interest was arbitrary and capricious. *Harrington v. Harris*, 118 F.3d 359, 368 (5th Cir. 1997). In contrast, procedural due process bars "the deprivation of [a protected] interest without due process of law." *Zinermon*, 494 US at 125–26 (alterations omitted). A plaintiff must show that he had a protected property interest in his employment and that he was deprived of that right without due process. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). While each claim requires a slightly different showing, both require that a plaintiff show a protected property interest as a threshold matter.

  A state or municipal employee does not automatically have a protected property interest in his employment simply by virtue of working for a government entity. Rather, a public employee holds a property interest only "where the public entity has acted to confer [or imply] a property interest by abrogating the right to terminate an employee without cause." *Bolton v. City of Dallas*, 472 F.3d 261, 263–64 (5th Cir. 2006) (quoting *Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003)). "[T]he existence of such an interest must be determined by reference to state [or city] law." *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993). In Texas, an employment contract is generally "terminable at will by either party," and employers may terminate employees without cause. *Id.* The Texas

Supreme Court has held that, absent some modification, deputy constables are at-will employees. *County of Dallas v. Wiland*, 216 S.W.3d 344, 347–48 (Tex. 2007). Thus, unless Player can show a contract or ordinance that creates such an exception, he has no protected property interest to support a due process claim.

Player relies on two ordinances for his contention that he has a property interest in continued employment with Dallas. First, Player cites a letter opinion from the Attorney General of Texas, which states that "a county civil service commission in a county with a basic civil service system created pursuant to chapter 158 of the Local Government Code may adopt a rule defining deputy constables as 'employees' covered by the system." *See* Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 16 [24-16]. Were a county to do so, a deputy constable would receive additional employment protections that could confer a property interest. Second, Player cites section 617.005 of the Texas Government Code, which states that the provisions regarding collective bargaining and striking "does not impair the right of public employees to present grievances concerning their wages, hours of employment, or conditions of work either individually or through a representative that does not claim the right to strike." TEX. GOV'T CODE § 617.005.

Neither provision establishes a property interest. The first provision allows a county discretion to admit a deputy constable into its civil service system but does not require it. Dallas has specifically provided that deputy constables hired after August 19, 2003, are not "employees" for the purposes of civil service designation. *See* DALLAS, TEX., ORDINANCES § 86-1. In fact, Player signed a form acknowledging that he was not covered by the Dallas

County Civil Service System.  *See* Pl.'s Resp., Ex. 12 [24-12].  The latter provision provides a right to grieve certain employment conditions.  *See infra* Section III.B.  But it does not limit an employer's ability to terminate employment in such a way that it creates an interest in continued employment.  *Cf. Corpus Christi Indep. Sch. Dist. v. Padilla*, 709 S.W.2d 700, 703–06 (finding that while a school board's employment decision implicated the plaintiffs' right to grieve, it did not infringe on any of their due process rights under the Fourteenth Amendment).  No applicable law or ordinance abrogates Dallas's right to terminate Player without cause.  Thus, Player cannot overcome the presumption under Texas law that he is an at-will employee.  Player does not have a protected property interest in his employment with Dallas.

As Player has no protected property interest in his employment with Dallas, he cannot show that Dallas violated either his substantive or procedural due process rights.  The Court therefore holds that Dallas is entitled to summary judgment as to Player's due process claims.[4]

---

[4]In his supplemental response, Player asserts for the first time the "stigma-plus" theory of liability: that Dallas deprived him of a liberty interest by inflicting stigma on his reputation without notice or an opportunity to clear his name.  *See* Pl.'s Supplemental Resp. 4–6 [44]. Player's second amended complaint asserts no such claim, nor does it allege the facts necessary to support the claim.  A claim raised for the first time in response to summary judgment is not properly before the Court.  *See, e.g.*, *United States ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) (unpub. and per curiam) (concluding that "the district court did not err in denying [a] motion for partial summary judgment [where the plaintiff] attempted to raise a new claim, not asserted in his fifth amended complaint."); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004) ("[The liberal amendment standard] does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage . . . . A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *Fisher v. Metro. Life*

### B. Dallas Provided Adequate Process
### Under Texas Government Code § 617.005

Player argues that Dallas violated section 617.005 of the Texas Government Code by refusing him the right to grieve his termination through the Dallas civil service system. *See* 2d Am. Compl. ¶¶ 63–69. Section 617.005 provides that state laws limiting collective bargaining and strikes do not "impair the right of public employees to present grievances concerning their wages, hours of employment, or conditions of work either individually or through a representative that does not claim the right to strike." Texas courts have interpreted this provision "to ensure only that public employees have access to those in a position of authority in order to air their grievances." *Corpus Christi Indep. Sch. Dist.*, 709 S.W.2d at 707. It does not require that employees have the opportunity to "present their grievances to the highest elected officials" through a formal hearing, nor does it require that the person hearing the grievance take any particular action. *Id.* (citing Tex. Att'y Gen. Op. No. H-422 (1974)).

Though Dallas denied Player civil service appeal rights, Player had other opportunities to grieve his termination. For example, Player received notice of the accusations against him and the documents supporting those accusations; he had an opportunity to respond to those allegations in writing to his supervisor, Evans; and Evans considered his response in making the decision to terminate him. Def.'s Mot. Summ. J., App. 30–45. Section 617.005 does not require participation in a formal hearing system. *See Corpus Christi Indep. Sch. Dist.*, 709

---

*Ins. Co.*, 895 F.2d 1073, 1078, n.3 (5th Cir. 1990) (rejecting argument not previously asserted in amended complaint). The Court therefore does not consider Player's "stigma-plus" claim.

S.W.2d at 707 (holding that a school board sufficiently complied with Texas grievance requirements by providing an open forum at its board meetings). As Player fails to raise a genuine issue of material fact as to the adequacies of Dallas's grievance procedures under section 617.005, the Court concludes that Dallas is entitled to summary judgment as to this claim.

### IV. DALLAS IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAYER'S FLSA CLAIM

Player also alleges that he worked several events for Evans without overtime compensation, in violation of the overtime provision of the FLSA. The FLSA requires employers to pay overtime compensation at one-and-a-half times the normal rate to covered employees who work more than forty hours a week. 29 U.S.C. §207(a)(1). To succeed on an FLSA claim, an employee "bears the burden of proving, with definite and certain evidence, that he performed work for which he was not properly compensated." *Reeves v. Int'l Tel. & Tel. Co.*, 616 F.2d 1342, 1351 (5th Cir. 1980) *implicit overruling on other grounds recognized in Heidtman v. County of El Paso*, 171 F.3d 1038, 1042 n.4 (5th Cir. 1999).

Even if the evidence is not perfectly accurate, an employee satisfies his burden "if [he] produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Harvill v. Westward Comms., L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (quoting *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)). "The burden shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to [negate] the reasonableness of the inference to be drawn

ORDER – PAGE 9

from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee even though the result may only be approximate." *Id.*

Next, the employee must show that he was "employed" during the time for which he is requesting overtime pay. *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995). An employee is "employed" for FLSA purposes if his employer "had knowledge, actual or constructive, that he was working." *Id.* While an employer with knowledge that an employee is working overtime "cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim," an employer's failure to pay for overtime hours does not violate the FLSA "if the employee fail[ed] to notify the employer or deliberately prevent[ed] the employer from acquiring knowledge of the overtime work." *Id.* (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir.1981)).

### A.  Player Raises Material Fact Issue as to Amount and Extent of Overtime Hours

In his second amended complaint, Player claims that he worked the following events and hours without overtime pay:

> 1. The Harumbee festival for two nine-hour days each year in 2005, 2006, 2007, 2009, and 2010, for a total of 90 hours;
>
> 2. The Kwanzaa festival for two eleven-hour days each year in 2005, 2006, 2007, 2009, and 2010, for a total of 110 hours; and

      3. The Martin Luther King, Jr. parade for one eight-hour day each year in 2006, 2007, 2008, 2009, 2010, and 2011, for a total of 48 hours.[5]

*See* 2d Am. Compl. ¶¶ 17–19, 58. In total, Player's complaint seeks overtime compensation for 248 hours.

      Player's affidavit does not support the number of overtime hours listed in his complaint, however. Specifically, Player avers that he worked a *total* of eight hours per day at the Harumbee festival in 2009, 2010, and 2011 (not nine hours per day for two days), which would reduce the uncompensated time from 90 hours to 24 hours. *See* Pl.'s Resp., Ex. 1 [24-1]. Similarly, Player avers that he worked a *total* of eight hours at the Kwanzaa festival in 2009 and 2010 (not eleven hours per day for two days), which would reduce the uncompensated time from 110 hours to 16 hours. *Id.* Finally, Player avers that he worked eight hours per day at the Martin Luther King, Jr. parade in 2009, 2010, and 2011. *Id.* Player's affidavit supports 64 uncompensated hours, not the 248 hours claimed in his complaint.

      Player provides several affidavits and the investigative reports of Danny Defenbaugh, who Dallas hired to investigate claims against Evans, to support his contention that Evans generally required his deputy constables to work at various events without appropriate compensation. *See* Pl.'s Resp., Ex. 2 [24-2] ("Constable Derick Evans required

---

      [5]Player states in his second amended complaint that the total amount worked for the parade was 88 hours. *Compare* 2d Am. Compl. ¶ 58 with *id.* ¶ 19. The Court assumes this is a typographical or computation error, as one eight-hour day multiplied by six years is 48 hours. *See also* Player's Aff, Pl.'s Resp., Ex. 1 (noting that he worked one eight-hour day during each Martin Luther King, Jr. parade).

ORDER – PAGE 11

everyone . . . to work the Kwanza Fest, Harambe, and MLK parades . . . . I [Ronald Linthicum] never received any overtime compensation for working this event . . . . If we failed to [work the event], there were repercussions to be suffered."); *id.*, Ex. 3 [24-3] ("We were required to work the Kwanza Festival and MLK events yearly without compensation. We worked 15 hours over a week-end period."); *id.*, Ex. 4 [24-4] ("[The special events] were mandatory shift assignments for which there was no compensation. If anyone refused to take a shift, then Constable Evans would not give approval for them to work off duty part-time jobs."); *id.*, Ex. 5 [24-5] ("I [Patricia Clark] was required to work Kwanzaa and MLK without pay or for involuntary comp time."); *id.*, Ex. 6 [24-6] ("Constable Derick Evans required us to participate in his campaign as a condition of employment by requiring us to . . . work the Kwanza Festival for eight hours without compensation."); *id.*, Ex. 9 24–27 [24-9] (investigative report noting that 22 deputy constables were "intimidated and coerced" to work at the events). Though the affidavits aver that all of the deputy constables were required to work certain events with inadequate compensation, none mentions Player specifically. Player is also not among the 22 uncompensated deputy constables listed in the investigative report.

Nonetheless, the Court finds that Player "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Harvill*, 433 F.3d at 441. Player's affidavit provides a basis for the Court to infer the amount and extent of his allegedly uncompensated work. The affidavits also affirm Player's description of Evans's policy requiring the deputy constables to work certain events, the number of hours

the deputy constables spent at the events, and Player's belief that Evans would retaliate if he complained. Other than stating its general policy regarding overtime, Dallas provides no evidence that contradicts Player's assertions. Thus, Player raises a genuine issue of material fact as to his alleged uncompensated overtime work.

### B. Player Raises Material Fact Issue as to Evans's Knowledge of Overtime Work

The affidavits and investigative report also support Player's argument that Evans had knowledge of his overtime work by virtue of the fact that he required it. *See supra* Section IV.A. Though Player did not include the overtime hours on his timesheets, this alone is not fatal to his claim. *Forrester*, 646 F.2d at 414 ("An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation."). In *Karr v. City of Beaumont*, police officers sued the city after the police department refused to pay them overtime compensation even though it required them to care for the police dog after their shifts. 950 F. Supp. 1317, 1323–24 (E.D. Tex. 1997). Because the police department required that the work be done, the court found that the police department "knew and had reason to believe" that the police officers were working overtime even though the police officers had not included the additional hours on their time sheets. *Id.* Similarly, Player's evidence suggests Evans had knowledge of the overtime work because he required that his deputy constables do it and threatened them if they refused. The Court finds that Player presents sufficient evidence to raise a material issue of fact with respect to Evans's knowledge of his uncompensated overtime work.

### *C. Evans's Knowledge is Imputed to Dallas*

As Player's supervisor, Evans had the authority to manage and approve overtime hours for his employees. *See* DALLAS, TEX., ORDINANCES § 82-112 ("Accrual of overtime . . . [m]ust be approved in advance by the employee's supervisor; however, if worked, it must be compensated, whether approved or not, if the work was known or should have been known by the supervisor."). Because Dallas authorized Evans to manage overtime for his subordinates, Evans's knowledge is imputed to Dallas. *See Reich v. Dep't of Conservation and Natural Resources*, 28 F.3d 1076, 1083–84 (11th Cir. 1994); *see also Abel v. Dep't of Corr. of State of Kansas*, 1995 WL 550045, at *4 (D. Kan. 1995) ("Having authorized the supervisors to maintain the time records and to resolve overtime issues, the defendant must be charged with the supervisors' knowledge.").

### *D. Player Raises Material Fact Issue Regarding Willfulness of Violation*

Under the FLSA, a plaintiff may recover three years of unpaid wages if the FLSA violation was "willful" or two years if it was not. 29 U.S.C. § 255(a). A violation is "willful" if the employer "knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2003) (quoting *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994)).

Player's evidence shows that Dallas received complaints against Evans in 2008 and 2009, which prompted Dallas to hire Defenbaugh to investigate Precinct 1 in 2009 and 2010. *See* Pl.'s Resp., Ex. 9 5 [24-9]. The complaints included allegations regarding Evans's practice of requiring deputy constables to work at various events without appropriate

compensation. *Id.* at 7.  At least some of Player's uncompensated work occurred in 2009, 2010, and 2011, after Dallas was on notice of the complaints against Evans.  *See* 2d Am. Compl. ¶¶ 17–19, 58.  Player can show that Dallas willfully violated the FLSA if he can show that Dallas had general knowledge that the FLSA was not being followed in Precinct 1.  *Singer*, 324 F.3d at 822 (upholding a jury's finding that a city "knew or showed reckless disregard" for FLSA violations when it failed to review its pay practices after the human resources department suggested that it might be necessary to do so).  Player has presented sufficient evidence to raise a genuine issue of material fact regarding the willfulness of the alleged FLSA violation.

## CONCLUSION

For the foregoing reasons, the Court grants summary judgment for Dallas as to Player's due process and Texas law claims.  The Court denies summary judgment as to Player's FLSA claim.

Signed February 19, 2014.

David C. Godbey
United States District Judge